UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERRI ANN KESSLER,<br><br>                    Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>                    Defendant. | NO.  C16-1164-BHS-JPD<br><br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Sherri Ann Kessler appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

REPORT AND RECOMMENDATION - 1

I.    FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-year-old woman with a high school education. Administrative Record ("AR") at 81. Plaintiff also obtained a certified nursing assistant license following two years of technical school. AR at 81. Her past work experience includes employment as a security guard, in home hospice provider, housekeeper, and nurse's aide in an elders facility. AR at 82-85. Plaintiff was last gainfully employed in 2008 as a security guard. AR at 83.

On June 27, 2013, plaintiff filed claims for SSI payments and DIB, asserting a disability onset date of September 15, 2007. AR at 292, 301.[2] During the hearing, she amended her onset date to July 16, 2012 due to the denial of previous applications for disability, which were not appealed. AR at 19, 79. Plaintiff asserts that she is disabled due to major depressive disorder, post-traumatic stress disorder ("PTSD"), panic disorder, fibromyalgia, and post-hypotension. AR at 143.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 141-42, 175-76. Plaintiff requested a hearing, which took place on December 19, 2014. AR at 42-83. On March 11, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 19-34. The Appeals Council denied plaintiff's request for review, AR at 8-13, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On August 2, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

---

[2] Plaintiff's date last insured for Title II is December 31, 2012. AR at 21, 331.

REPORT AND RECOMMENDATION - 2

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

REPORT AND RECOMMENDATION - 3

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Ms. Kessler bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On March 11, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since September 15, 2007, the alleged onset date.

REPORT AND RECOMMENDATION - 5

3. The claimant has the following severe impairments: obesity, Hashimoto thyroiditis, Raynaud's, mood disorder versus dysthymia, histrionic personality disorder, anxiety related disorder (GAD, PTSD, panic pseudo seizures), fibromyalgia, headaches.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: she can occasionally balance, stoop, kneel, and crouch. She cannot climb ladders, rope[ ]s, scaffolds, ramps, or stairs. She cannot crawl. She should avoid concentrated exposure to vibration and hazards.

    She could perform simple, routine tasks and follow short, simple instructions. She could do work that needs little or no judgment, and could perform simple duties that can be learned on the job in a short period.

    She requires a work environment with minimal supervisor contact. Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges, and it does not preclude being in proximity to the supervisor.

    She can work in proximity to co-workers but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with co-workers. She requires a work environment that is predictable and with few work setting changes. She requires a work environment without public contact.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1964 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.[4]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

    supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2007, through the date of this decision.

AR at 21-33.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?

2. Did the ALJ err in assessing plaintiff's RFC?

Dkt. 16 at 1; Dkt. 20 at 1.

## VII. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

#### 1. Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough

REPORT AND RECOMMENDATION - 7

summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

      2.     Dan Garcia, M.D.

Plaintiff contends that the ALJ erred by giving little weight to Dr. Garcia's April 2013

REPORT AND RECOMMENDATION - 8

and December 2014 opinions. AR at 483-85, 912-13. On April 15, 2013, Dr. Garcia noted that plaintiff was visiting his office for a "disability evaluation" and believed that her fibromyalgia disabled her. AR at 480. On examination, Dr. Garcia noted large muscle group tenderness, lower back tenderness, reduced range of motion in the lower back to "50% of normal", positive straight leg raising, and altered and unsteady gait which Dr. Garcia believed to be caused by dizziness related to her hypotension. AR at 481. He diagnosed elevated carcinoembryonic antigen ("CEA"), diverticulosis, morbid obesity, myalgia/myositis, and hypotension. AR at 481. He opined that "she does have presentation symptoms and signs as reflected on physical exam consistent with fibromyalgia of significance. Accordingly his (sic) my opinion [is] that the patient cannot work. Over the next 3-6 months it would be reasonable for her to see rheumatology and cardiology to try to sort this out." AR at 482.

On the same date, Dr. Garcia completed a Physical Functional Evaluation form for DSHS. AR at 483-85. On that form, Dr. Garcia indicated that plaintiff's fibromyalgia would cause moderate limitations in her ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop and crouch. AR at 484. He further opined that her post-hypotension would cause moderate limitations in her ability to stoop and crouch. AR at 484. Dr. Garcia indicated that she is limited to "sedentary work." AR at 485. At the bottom of the form, he wrote that she will have these limitations for an "indefinite" period of time, and "will need rheumatology/cardiology consult but not contingent (undecipherable) State Disability. She is disabled." AR at 485.

On December 9, 2014, Dr. Garcia completed a RFC Questionnaire. AR at 912-913. He opined that (1) plaintiff would "often" experience deficits in attention and concentration during the workday due to her symptoms; (2) she could walk two city blocks before experiencing pain or requiring rest; (3) she could sit for 30 minutes at a time and 3 of 8 hours

REPORT AND RECOMMENDATION - 9

in a workday; (4) she could stand/walk for 15 minutes at a time and 2 of 8 hours in a workday; (5) she requires a position that allows her to shift positions at will (sit/stand option); (6) she requires an additional 15 minute break during the workday; (7) she could lift and carry less than ten pounds frequently, 10 pounds occasionally, but never more than 10 pounds; and (8) she would miss 4 or more days of work per month due to her impairments. AR at 912-13. He indicated that plaintiff is not a malingerer, and it is "not likely" that she is physically capable of working a full-time job on a sustained basis. AR at 913.

The ALJ gave "little weight" to Dr. Garcia's April 2013 and December 2014 opinions. With respect to the ALJ's April 2013 opinion in which Dr. Garcia opined that plaintiff is limited to sedentary work but then also stated that she was disabled, AR at 485, the ALJ found that Dr. Garcia failed to explain "this inherent internal inconsistency." AR at 30. The ALJ also found that Dr. Garcia's opinion appeared to be heavily based on the claimant's own statements prior to the evaluation, as the purpose of plaintiff's appointment was for "DSHS disability evaluation" and plaintiff initially reported that she was unable to work due to her fibromyalgia. AR at 30. The ALJ observed that "the corresponding examination notes fail to support the degree of impairment Dr. Garcia alleges. Additionally, Dr. Garcia's own treatment notes from the month prior to his evaluation note that the claimant had a normal gait and that her extremities had good reflex sensation." AR at 30. As a result, the ALJ found that "Dr. Garcia's opinion is largely unsupported by the longitudinal history of the treatment notes, is internally inconsistent, and appears heavily based on the claimant's self-reporting." AR at 30.

The ALJ's reasons for rejecting Dr. Garcia's April 2013 opinion were specific and legitimate, and supported by substantial evidence in the record. Plaintiff does not even acknowledge the fact that Dr. Garcia's opinion describes plaintiff as both capable of sedentary work and disabled at the same time. However, this internal inconsistency was a valid reason

REPORT AND RECOMMENDATION - 10

for the ALJ to afford Dr. Garcia's opinion less weight.  Plaintiff also does not challenge the ALJ's credibility assessment in this case.  In light of the fact that Dr. Garcia's longitudinal history of treatment notes do not reflect the degree of limitation reflected in his April 15, 2013 opinion, a conflict which the ALJ finds also undermines Dr. Garcia's conclusions, the ALJ infers that Dr. Garcia must have relied heavily on plaintiff's less than credible statements that she cannot work.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (inconsistencies between a doctor's opinion and his own reports provide a specific and legitimate reason for rejecting even a treating doctor's opinion).  This was a reasonable conclusion, based upon Dr. Garcia's note that at the outset of plaintiff's appointment "she states the reason she cannot work as because of severe fibromyalgia progressive over the last 6 years . . . She cannot work as a nurse's aide and she has in the past."  AR at 480.[5]  Dr. Garcia appeared to have been relying in particular on plaintiff's own opinion regarding her ability to work.  A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a plaintiff.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).  *See also Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2015) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").  Thus, the ALJ provided several valid reasons for rejecting Dr. Garcia's April 2013 opinion, which are supported by the record.

With respect to Dr. Garcia's subsequent opinion in December 2014, the ALJ found that Dr. Garcia "provides no explanation for the change in his opinion since his prior evaluation in April 2013.  As noted above, the medical evidence from this time shows the claimant to

---

[5] Fibromyalgia is notable as a condition that eludes objective measurement.  However, but this is not a case where the ALJ erred by effectively requiring objective evidence to confirm plaintiff's diagnosis.  *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

REPORT AND RECOMMENDATION - 11

regularly have an unremarkable gait, and physical examinations show little impairment." AR at 30. The ALJ also noted that Dr. Garcia's lifting restrictions appear to have been contradicted by plaintiff's own daily activities, as she dropped a chainsaw on her foot in June 2014. AR at 30. The ALJ observed, "in order to drop it on her foot she must have been holding it." AR at 30. Similarly, "in August 2014, the claimant reported she was tired of being the go to person and maintain house order without assistance." AR at 30. The ALJ noted that "such a statement is contradictory to the claimant's testimony [that] others helped with the household chores." AR at 30. The ALJ concluded that "Dr. Garcia offers no explanation or support for his opinions, and the severity he notes is not reflected in the corresponding medical records," and the ALJ then cites to numerous treatment notes showing normal gait, balance, coordination, senses, and motor skills. AR at 30-31.

      Plaintiff has not shown that the ALJ erred by finding that Dr. Garcia's December 2014 opinion was inconsistent with his own examination findings, and other medical records reflecting normal functioning. As noted above, an ALJ may discount a doctor's opinion if it conflicts with his own treatment notes and examination findings. *See e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (the ALJ did not err by rejecting a psychologist's functional assessment which conflicted with his own written report and test results). Similarly, the ALJ could reasonably find Dr. Garcia's opinion to be inconsistent with plaintiff's daily activities, such as operating a chainsaw and performing household chores without assistance, as reflected in the record. AR at 30 (citing AR at 795, 865). *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (an ALJ may discount a medical source opinion to the extent it conflicts with claimant's report of daily activities).

REPORT AND RECOMMENDATION - 12

Accordingly, the ALJ did not err in evaluating Dr. Garcia's opinions. The ALJ provided several specific and legitimate reasons for rejecting Dr. Garcia's opinions, and these reasons are supported by substantial evidence in the record.

B.  The ALJ Did Not Err in Assessing Plaintiff's RFC

Plaintiff contends that the ALJ erred in assessing plaintiff's RFC by failing to consider plaintiff's post-traumatic stress disorder ("PTSD"), or adequately accommodate plaintiff's moderate limitations in concentration, persistence, and pace. Dkt. 16 at 9-13, 16-17. The Commissioner contends that both of plaintiff's arguments are unsupported by the record. Dkt. 20 at 7-10.

As a threshold matter, it is not clear why plaintiff believes that the ALJ did not consider PTSD in assessing plaintiff's RFC, because the ALJ found that PTSD was a severe mental impairment at step two. AR at 22. As a result, the ALJ considered all of plaintiff's impairments, including PTSD, in his analysis. AR at 21-22. Although plaintiff argues that the ALJ failed to "consider the diagnoses and effect upon her mental abilities (particularly her ability to maintain focus or [concentration, persistence, or pace] throughout a workday) and resulted in an RFC assessment unsupported by substantial evidence," plaintiff does not explain what other limitations he believes the ALJ should have included in the RFC to account for plaintiff's PTSD. The ALJ limited plaintiff to "simple, routine tasks" requiring her to "follow only] short, simple instructions," "work that needs little or no judgment," and "simple duties that can be learned on the job in a short period." AR at 24. Without more, plaintiff has not shown that the ALJ ignored her PTSD diagnosis, which the ALJ found to be severe, in assessing plaintiff's RFC in this case.

Finally, plaintiff argues that the ALJ's RFC and vocational expert hypothetical question did not adequately accommodate plaintiff's moderate limitation in maintaining concentration,

REPORT AND RECOMMENDATION - 13

persistence, and pace ("CPP") by reducing these limitations to "simple work." Dkt. 16 at 9-13. In support of this argument, plaintiff cites out of circuit authority and also asks the Court to rely on the Ninth Circuit's unpublished decision in *Brink v. Comm'r SSA*, 343 Fed. App'x 211, 212 (9th Cir. 2009), which held that a limitation to "simple, repetitive work" in the RFC does not encompass an ALJ's finding that a claimant has moderate difficulty maintaining concentration, persistence, or pace. However, the Court finds that the Ninth Circuit's published decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) controls this case. Moreover, the Ninth Circuit's more recent unpublished case, *Lawhorn v. Colvin*, 609 F.App'x 449 (9th Cir. 2015), which discusses *Stubbs-Danielson* at some length, is on point.

In *Stubbs–Danielson*, the Ninth Circuit held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." 539 F.3d at 1174. In that case, the ALJ's finding that a claimant had the RFC "to perform simple, routine, repetitive sedentary work," as well as a hypothetical question that reflected the same limitations, adequately incorporated limitations related to pace and other mental limitations regarding attention, concentration, and adaption that had been identified by doctors. *Id.* at 1173–76. Specifically, only one doctor had assessed whether the claimant could perform unskilled work on a sustained basis, and this doctor had concluded that the claimant could do so despite the doctor's additional finding that the claimant had a slow pace. *Id.* at 1174–75.

Similarly, in the recent unpublished *Lawhorn* decision, the Ninth Circuit concluded that just as in *Stubbs-Danielson*, the ALJ did not err by limiting the claimant to "simple, routine" tasks because one physician had found that the "Lawhorn had difficulty concentrating but nonetheless concluded that he could perform 'simple and repetitive tasks as well as more

REPORT AND RECOMMENDATION - 14

detailed and complex ones.'" 609 F.App'x at 450. The Ninth Circuit concluded that the ALJ's RFC and hypothetical questions were consistent with the restrictions identified in the medical record, and thus adequately described Lawhorn's limitations. *Id.* (citing *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180–81 (11th Cir. 2011) (requiring hypothetical question posed to vocational expert to account specifically for "moderate limitation[s] in maintaining concentration, persistence, and pace")).

Here, the ALJ credited the opinions of non-examining state agency physicians, Drs. Collingwood and Fitterer. Specifically, in July 2013, Dr. Collingwood found that plaintiff had moderate limitations in CPP in both (1) maintaining attention and concentration for extended periods, and (2) completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR at 153-54, 169-70. Dr. Collingwood's narrative explanation of her opinion provided that plaintiff would be "able to sustain attn./conc for short, simple and some detailed and/or multi-step instructions and work-like procedures. Ability to sustain CPP may wane in accordance with subjective experiences of FM pain and/or w/ mood, anx, or PD sx." AR at 154, 170. In October 2013, Dr. Fitterer "affirmed as written" Dr. Collingwood's assessments and opined identical limitations in CPP with an identical narrative explanation. AR At 183-84, 187-89, 200-01, 204-06. The ALJ accorded "significant weight" to these assessments as "consistent" with the treatment records and plaintiff's activities of daily living. AR at 28-29.

Like in *Stubbs-Danielson* and *Lawhorn*, the ALJ's RFC assessment adequately captured the restrictions identified in the medical testimony of Drs. Collingwood and Fitterer related to plaintiff's concentration, persistence, or pace by limiting plaintiff to "simple, routine tasks" with "short, simple instructions" and "simple duties that can be learned on the job in a

REPORT AND RECOMMENDATION - 15

short period." AR at 24.  The ALJ gave great weight to the opinions of Drs. Collingwood and Fitterer, who opined that although plaintiff's moderate limitations in CPP might wane with symptoms, she could nevertheless perform tasks involving "short, simple and some detailed and/or multi-step instructions and work-like procedures."  AR at 24, 28-39, 147-50, 187-89. Because the ALJ properly "took into account those limitations for which there was record support," the ALJ's RFC finding and resulting vocational hypothetical question were not erroneous.  *Bayliss*, 427 F.3d at 1217.  Accordingly, the ALJ did not err in assessing plaintiff's RFC in this case.

## VIII.  CONCLUSION

The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.  For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **April 20, 2017**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 21, 2017**.

REPORT AND RECOMMENDATION - 16

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 6th day of April, 2017.

*James P. Donohue*
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 17